People v Rosales (2019 NY Slip Op 06699)





People v Rosales


2019 NY Slip Op 06699


Decided on September 24, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 24, 2019

Acosta, P.J., Manzanet-Daniels, Mazzarelli, Webber, Moulton, JJ.


9903 11977/88

[*1]The People of the State of New York, Ind. Respondent,
v
Luis Rosales, Defendant-Appellant.


Robert S. Dean, Center for Appellate Litigation, New York (Molly Schindler of counsel), for appellant.
Cyrus R. Vance, Jr., District Attorney, New York (Noreen M. Stackhouse of counsel), for respondent.



Order, Supreme Court, New York County (Roger S. Hayes, J.), entered on or about May 18, 2018, which denied defendant's CPL 440.10 motion to vacate a judgment of the same court (Herbert I. Altman, J.), rendered April 19, 1991, unanimously affirmed.
The Supreme Court providently exercised its discretion in denying, without a hearing, defendant's motion to vacate his 1991 murder conviction on the basis of newly discovered evidence. "[W]hether a defendant is entitled to a hearing on a CPL 440.10 motion is a discretionary determination" (People v Jones, 24 NY3d 623, 635 [2014]).
In 2017, defendant submitted an affidavit from a fellow inmate stating that defendant did not commit the 1988 shooting at issue, and that a man named "Yeppes" who resembled defendant committed the crime. The motion court properly concluded that this did not constitute newly discovered evidence. At the time of his trial, defendant knew, based primarily on a police report, that police suspected a "Yeppes" or "Yeppez," of the shooting, and that a man named Jose Yepez was arrested for a pistol whipping close to the time and place of the homicide. In his moving papers, defendant acknowledged that he knew Yeppes, and attached a photo of himself with Jose Yepez to show the resemblance between the two men. Thus, even without the proposed new witness's testimony, defendant could have pursued a misidentification theory at trial, through his own testimony and cross-examination of police officers. Moreover, defendant testified at his trial that a detective asked if he knew someone named "Jepis," and defendant said he did not.
In any event, regardless of whether the affidavit constitutes newly discovered evidence, the affidavit was not "of such character as to create a probability that had [it] been received at the trial the verdict would have been more favorable to the defendant" (CPL 440.10[1][g]). The trial evidence included the testimony of eyewitnesses to the shooting who identified defendant as one of the shooters, and evidence that cartridge cases found at the crime scene matched the pistol found on defendant when he was arrested. There was also evidence that there were two shooters, so that Yepez could have been the other shooter.
Furthermore, the proposed new witness would have been subject to significant impeachment, rendering it even less likely that his testimony would result in a different verdict. The witness, defendant's fellow inmate, was a persistent violent felony offender serving 25 years to life for robbery in the first degree who previously attempted to present a false alibi in connection with one of his own convictions. He also came forward almost 30 years after the murder, and long after Yepez had died.
Accordingly, the court providently exercised its discretion in determining that no hearing was required, notwithstanding its reliance on the incorrect evidentiary standard (see People v [*2]Brown, 56 NY2d 242, 247 [1982]; People v Velazquez, 143 AD3d 126, 131-32 [1st Dept 2016], lv denied 28 NY3d 1189 [2016]). We have considered and rejected defendant's remaining arguments to the contrary.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: SEPTEMBER 24, 2019
CLERK